IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DCCC, *et al.*,<br><br>                            *Plaintiffs,*<br><br>v.<br><br>PAUL ZIRIAX, *in his official capacity as* SECRETARY OF THE OKLAHOMA STATE ELECTION BOARD, *et al.*,<br>                            *Defendants.* | Case No:    20-CV-211-JED-JFJ |

**DEFENDANTS' MOTION TO DISMISS IMPROPER PARTIES AND DISMISS OR TRANSFER VENUE AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

I. Argument ...................................................................................................................1

    A.    Defendant Ziriax is the only proper party for the claims raised, and the other Defendants should be dismissed. ................................................................1

    B.    Venue is improper in the Northern District of Oklahoma. ....................................4

        1. Venue in this District is improper for a suit against Defendant Ziriax alone. ........................................................................................4

        2. Venue is improper for all Defendants. ..............................................................10

    C.    Alternatively, this Court should transfer venue for the convenience of the parties and witnesses. ........................................................................................13

II. Conclusion ................................................................................................................15

Five of the six Defendants, Tom Montgomery, Dr. Tim Mauldin, Heather Mahieu Cline, Jerry Buchanan, and Debi Thompson (the "Board Members") respectfully move for dismissal from this case under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 21 because they are not the proper parties for the claims raised in the complaint. Defendant Paul Ziriax agrees with the Board Members that he alone is the proper party.

In addition, all Defendants respectfully move for dismissal or transfer of this case under Fed. R. Civ. P. 12(b)(3) due to improper venue. Should this Court find venue is proper, Defendants alternatively request transfer under 28 U.S.C. § 1404(a).

## I. ARGUMENT

**A. Defendant Ziriax is the only proper party for the claims raised, and the other Defendants should be dismissed.**

Only state officials who enforce the law at issue in a complaint are proper parties under 42 U.S.C. § 1983. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). If a state official does not enforce the law at issue, he is immune from suit because sovereign immunity protects state officials that have no role in enforcement of the relevant law. *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("[I]t is plain that [a state] officer must have some connection with the enforcement of the act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

Three different rules require dismissal of improper parties. First, a party seeking relief must state a "plausible" claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). If the complaint does not allege adverse actions by certain defendants, it does not state a plausible claim against those defendants. *See Robbins v. Oklahoma*,

1

519 F.3d 1242, 1249 (10th Cir. 2008) ("[P]laintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their . . . rights."). Second, where the complaint states no claim at all against certain defendants, no case against them exists. *See Smith v. United States*, 561 F.3d 1090, 1097-99 (10th Cir. 2009). As a result, the Tenth Circuit has approved dismissing improper parties under both Rule 12(b)(1) and Rule 12(b)(6). *See id.* Third and finally, a court may dismiss improper parties as misjoined. *See* Fed. R. Civ. P. 21.

The Board Members seek dismissal from this case because Plaintiffs' claims solely concern Defendant Ziriax's enforcement authority. Plaintiffs' decision to sue members of the election board may just be a misunderstanding: Although Defendant Ziriax is the "Secretary" of the State Election Board, Oklahoma law makes him independent of the control of the Board Members. Enforcing the statutes challenged in this suit are the responsibility of the Secretary specifically, not the Board Members.

Under Oklahoma law, the Board Members focus generally on contests of candidacy and appointing county election board officials. They have the authority to strike or retain a candidate under OKLA. STAT. tit. 26, §§ 5-101—5-131. Their other duties are not related to ballots. They appoint two members of each county election board and the secretary of each county election board and have removal authority over certain members of county boards. *Id.* §§ 2-111—2-112, 2-114. The Board Members also certify the election results after receiving the results from each county board. *Id.* § 7-136. They have no role in directing how to receive or count ballots in any county.

In contrast to these limited duties of the Board Members, the Secretary has the general supervisory authority over all county election boards and promulgates rules about election laws

under his own authority. *Id.* § 2-107. He promulgated the relevant rules that Oklahoma election officials have to follow regarding absentee ballots. *See* 36 Ok. Reg. 1545 (latest version of Okla. Admin. Code. § 230:30-11-1.1 promulgated under Secretary's authority); 34 Ok. Reg. 1122 (latest version of Okla. Admin. Code. § 230:30-11-5 promulgated under Secretary's authority); 28 Ok. Reg. 1154 (latest version of Okla. Admin. Code. § 230:30-9-6 promulgated under Secretary's authority). He also enforces the notarization requirement for absentee ballots. *See* 20 Ok. Reg. 1097 (latest version of Okla. Admin. Code. § 230:30-23-1 promulgated under Secretary's authority). Even the latest legislation regarding the requirements for absentee ballots commits necessary emergency procedures to the Secretary. *See* Enrolled S.B. 210, § 3(B) (2020). Thus, laws regarding voting (as opposed to running as a candidate) are committed to the Secretary.

The Secretary is also not under the Board Members' supervision. He is appointed by the state Legislature, not the Board Members. *See* OKLA. STAT. tit. 26, § 2-101.6; Okla. Senate Rule 2-2. The Board Members have no supervisory authority over him. Accordingly, the Secretary's power over certain areas of election law is exclusive of the Board Members' authority.

All of Plaintiffs' claims concern authority committed to the Secretary, Defendant Ziriax, not to the Board Members. Am. Compl. ¶ 6. Their claims entirely address absentee ballots: (1) the requirements for absentee ballots, (2) the process of returning absentee ballots, (3) the time for returning absentee ballots, and (4) the rules regarding ballot harvesting and absentee ballots. *Id.* Plaintiffs advance no claims about candidates, which the Board Members would handle. The relief they seek is also entirely about altering or enjoining the rules promulgated by the Secretary regarding absentee ballots. *See* Am. Compl. at 42-43. All of that relief would come from

3

Defendant Ziriax under his authority as Secretary, and there is no prayer for relief for election candidates that would make the Board Members proper parties to this case.

Accordingly, this Court should dismiss the Board Members as improper parties to this case because the claims advanced and relief sought exclusively involve the authority of the Secretary, Defendant Ziriax.

**B.     Venue is improper in the Northern District of Oklahoma.**

Venue exists, in relevant part, in "a judicial district in which any defendant resides" when all defendants are residents of the same state, or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b); *see* Am. Compl. ¶ 11 (pleading those two venue provisions). When a defendant seeks dismissal for improper venue under Fed. R. Civ. P. 12(b)(3), a court may dismiss the action or transfer the case to a district that is a proper venue. *See* 28 U.S.C. § 1406(a). "Once an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper." *ConocoPhillips Co. v. Jump Oil Co., Inc.*, 948 F.Supp.2d 1272, 1277 (N.D. Okla. 2013).

This motion will separately address venue for Defendant Ziriax alone and venue for all Defendants because the analysis is different depending on whether this Court dismisses some of the Defendants.

**1. Venue in this District is improper for a suit against Defendant Ziriax alone.**

Defendant Ziriax resides in the Western District of Oklahoma, both officially and personally. *See* OKLA. STAT. tit. 26, § 2-108 (official residence is "the seat of government"); *id.* tit. 73, § 1 (seat of government is "Oklahoma City"); *State Election Board Secretary and Members*, OKLA.     STATE     ELECTION     BOARD,     https://www.ok.gov/elections/About_Us/

4

Secretary_and_Board/index.html (listing his city of personal residence as Edmond). He has no residence in the Northern District of Oklahoma. Thus, if Defendant Ziriax is the sole proper defendant, the residency prong of 28 U.S. § 1391(b) counsels in favor of venue being proper in the Western District.

The only relevant venue provision that would allow suit against Defendant Ziriax in this District is the provision regarding where a substantial part of the events or omissions occurred. But this provision focuses on the events or omissions of the *Defendant*—the complained-of actions that caused the alleged harm—not where the effects of those events or omissions happen to be felt. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Here, the Complaint focuses on the actions taken by Defendant Ziriax, all of which took place in the Western District of Oklahoma, not this District.

In general, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original). Venue is a personal privilege of defendants that gives them "litigational convenience." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). Transactional venue in particular—about where events occurred—seeks permissible venues where all defendants can reasonably be sued. *See Leroy*, 443 U.S. at 184. In light of venue's purpose to protect defendants, Congress has rarely allowed venue where a plaintiff resides, and the Supreme Court has warned lower courts not to broadly interpret the statute in that way lest venue become a doctrine that benefits plaintiffs. *See id.* Venue also focuses on the convenience of a particular district, not merely the convenience of the state where the district is located. *See*

5

CHARLES A. WRIGHT & ARTHUR R. MILLER, *ET AL.*, 14D FED. PRAC. & PROC. § 3801 (hereinafter "WRIGHT & MILLER § 3801"). This distinction matters for state officials because subjecting all state officials to venue anywhere in their state would deprive them of any meaningful benefit from the venue statute. *Id.*

The amendment to the venue statute in 1990 does not change the basic function of these venue rules. The older version of the general venue statute provided, in relevant part, that venue existed in the judicial district "in which the claim arose." 28 U.S.C. § 1391(a), (b) (1990). The amendment to the statute changed that language to permit venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (2020). But as the Eighth Circuit concluded shortly after the statutory amendment, there are at least three separate reasons for concluding that the current venue statute still focuses on defendant's activities, not plaintiffs' activities or effects on plaintiffs. *See Woodke*, 70 F.3d at 985.

First, the venue statute focuses on defendants' activities because a focus on both sides' activities would be inconsistent with the purpose of venue. *See id*; *see also* WRIGHT & MILLER § 3801. Interpreting the multiple permissible venues expansively would deny defendants any protection beyond the protection already offered by personal jurisdiction. *See Woodke*, 70 F.3d at 985. Second, reading the venue statute to include plaintiffs' activities would be inconsistent with the text. *See id.* The statute mentions reviewing events and omissions, and reading the statute to include both defendants and plaintiffs would mean examining plaintiffs' omissions. *See id.* This is not a reasonable reading of the text because plaintiffs' omissions cannot be relevant to a cause of action or to venue. *See id.* Third and finally, if Congress wanted to make venue

6

proper where damages or adverse effects are suffered, it would have specified Plaintiffs' residence in the venue statute. *See id.*; *cf.* 28 U.S.C. § 1391(e)(1) (including where "the plaintiff resides" under a different section of the venue statute). Accordingly, the venue statute continues to protect defendants by subjecting them to suit only where they reside, or engaged in substantial events or omissions, rather than allowing suit wherever plaintiffs reside or might feel the effects of defendants' remote actions.

Although two other circuits have held that the events or omissions relevant to venue include plaintiffs' activities and effects on plaintiffs,[1] in contradiction to the Second, Eighth, and Eleventh Circuits, the Tenth Circuit has not adopted the plaintiff-centric approach to venue, but instead in an unpublished decision relied on the Eighth Circuit's defendant-centric approach. *See Goff v. Hackett Stone Co.*, 185 F.3d 874, 1999 WL 397409, at *1 (10th Cir. 1999) (unpublished table decision); *see also Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 & n.11 (10th Cir. 2010) (acknowledging *Goff* decision but declining to "definitively answer" venue question). When this issue has arisen in this circuit, district courts have tended to follow the *Goff* rule focusing on defendants' activities. *See, e.g.*, *Hanson v. Bosley & Bratch, Inc.*, No. 17CV1489, 2018 WL 4491424, at *3 (D. Colo. Sept. 18, 2018); *Titsworth v. Hodge*, No. 17CV350, 2018 WL 3312985, at *2–3 (E.D. Okla. July 3, 2018); *Transp. Funding, LLC*, 2017 WL 4223126, at *4 & n.58; *Quorum Health Res., LLC v. Lexington Ins. Co.*, No. 11CV374, 2012 WL 769744, at *3

---

[1] *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 n.6 (1st Cir. 2001); *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998); *cf. also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (examining plaintiff's activities but concluding venue is only proper where defendant's activities occurred).

7

(D.N.M. Mar. 7, 2012); *Graymore, LLC v. Gray*, No. 06CV638, 2007 WL 1059004, at *14 (D. Colo. Apr. 6, 2007).

The courts that disagree with the majority view of venue adopted by the Eighth Circuit and by *Goff* appear to be blurring the line between questions of venue and those of personal jurisdiction. For example, the First Circuit held that venue was proper in Puerto Rico for a suit against a Georgia insurer of a boat owned by a resident of the Virgin Islands merely because the boat sank in Puerto Rico—even though the insurer took no acts in Puerto Rico—thereby subjecting the insurer to venue anywhere the boat may happen to travel. *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 41-42 (1st Cir. 2001). But that sort of "minimum contacts" analysis of personal jurisdiction is not the same as the activities relevant to venue analysis. WRIGHT & MILLER § 3801 ("Venue laws give added protection to defendants beyond those provided by the statutory and constitutional prerequisites of personal jurisdiction."). Courts should not look to minimum contacts for purposes of venue unless no district contains a substantial part of the relevant events. *See* 28 U.S.C. § 1391(b)(3). For this reason, the Second, Eighth, and Eleventh Circuits, as well as the *Goff* decision from the Tenth Circuit, read the venue statute to avoid conflating these two distinct doctrines. *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ("It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.").

Under the *Goff* rule, which looks to defendants' activities rather than a minimum contacts analysis, venue is not proper in this district. For example, in a suit challenging laws regulating initiative petitions not dissimilar from this case, a court held that the Florida Secretary of State

8

was not subject to venue outside the state capitol when all of his relevant actions occurred there. *Fla. Hometown Democracy, Inc. v. Browning*, No. 08CV80636, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008). Specifically, the suit challenged Florida laws setting filing deadlines and allowing property owners to exclude persons advocating for or against initiative petitions from their property, as well as challenging the acts of the Secretary with respect to a specific petition. *Id.* at *1. The Secretary argued that because his office was in Tallahassee (in the Northern District of Florida), and the complaint did not allege he took any acts in the Southern District, venue was improper in the Southern District. *Id.* at *2. The plaintiffs countered that many petition signatures filed with the Secretary came from counties in the Southern District and that the challenged laws apply uniformly throughout the state. *Id.* The court agreed with the Secretary that venue in the Southern District was improper, rejecting the plaintiffs argument that "their constitutional challenges may be brought in this district against Defendant under 28 U.S.C. § 1391(b)(2)":

> Nothing in the record shows that Defendant took any actions in this district with respect to the challenged statutes. While Plaintiffs argue that they were adversely impacted by these statutes in this district, that fact has no bearing on the Court's analysis. The relevant inquiry for the Court rests on the activities of Defendant, and not Plaintiffs. *Jenkins Brick*, 321 F.3d at 1371-72. Keeping in mind that the venue statute serves to protect a defendant, *id.* at 1371, the dearth of evidence regarding Defendant's acts in this district cannot support venue under 28 U.S.C. § 1391(b)(2). Because venue cannot be sustained under 28 U.S.C. § 1391(b)(2), the Court must therefore rely on the general rule that the Secretary of State's residence for venue purposes is the Northern District of Florida, where he performs his official duties.

*Id.* at *4 (footnotes omitted).

For similar reasons, under the rule used by the Tenth Circuit in *Goff*, venue in this case is only proper in the Western District of Oklahoma because that is the only place that Defendant Ziriax has acted—and his acts are the events or omissions that are the subject of Plaintiffs'

9

complaint. None of Defendant Ziriax's acts or omissions occurred in this District. His office is in Oklahoma City, he promulgates rules in Oklahoma City, and he enforces, and issues guidance on complying with, the challenged Oklahoma laws from his office in Oklahoma City. *See* OKLA. STAT. tit. 26, § 2-108; *id.* tit. 73, § 1. The fact that the effects of his actions enforcing state law might be felt throughout the state is insufficient to support venue in this District. Otherwise, venue would be proper in any of the three districts in Oklahoma merely because Defendant Ziriax issues statewide rules from Oklahoma City, and he would not receive any protection from the venue statute, making it a virtual nullity and redundant with the constitutional requirements of personal jurisdiction.

Defendant Ziriax respectfully requests that this Court follow the *Goff* rule and either dismiss or transfer this case to the Western District of Oklahoma due to the improper venue.

**2. Venue is improper for all Defendants.**

If this Court does not grant the portion of this motion regarding improper parties, then the venue analysis is largely the same, although an additional residence issue must be addressed. The Board Members incorporate Defendant Ziriax's arguments by reference, *see supra* Part B.1, because the arguments regarding "substantial part of the events or omissions" apply equally to them. All of their official acts occur in Oklahoma City. While all of the Board Members officially reside in the Western District of Oklahoma, *see* OKLA. STAT. tit. 26, § 2-108; *id.* tit. 73, § 1, only three of the Board Members personally reside there, *see State Election Board Secretary and Members*, OKLA. STATE ELECTION BOARD, https://www.ok.gov/elections/About_Us/Secretary_and_Board/index.html (listing cities of personal residence). Defendant Jerry Buchanan, one of the alternate members, has a personal residence in this district—specifically,

in Tulsa. *See id.*[2] Thus, if all Defendants remain in this case, this Court must address whether a personal residence satisfies the residence portion of the venue statute when a defendant is sued in its official capacity and its official acts take place in another district.

Because Defendants are only sued in their official capacity in this suit, the only relevant residence is their office. Courts have long held that defendants sued in their official capacity may only be sued where they maintain their office. WRIGHT & MILLER § 3805. That rule still holds true under the current venue statute. The statute states that venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *See* 28 U.S.C. § 1391(b)(1). It then defines residency as "*the* judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1) (emphasis added). This statute does not allow for residency in both the official and personal residence; it specifies "the" residence relevant to the suit. *Id.* The capacity in which the official is sued determines the residence.

Much of the case law on this issue addresses the analogous residence provision for federal officials, 28 U.S.C. § 1391(e)(1)(A), which applies the same definition of residence. Courts have long concluded that a federal official sued in his official capacity resides exclusively in Washington D.C. *See, e.g., Stroud v. Benson*, 254 F.2d 448, 451 (4th Cir. 1958) (holding the Secretary of Agriculture's residence is only Washington D.C.). Courts also consider that official residence to be the only residence for purposes of the venue statute. *See, e.g., Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) (holding that the FTC's regional office in

---

[2] While the Chairman's personal residence is not in the same district as his official residence, it is not relevant to this District's venue analysis because it is in the Eastern District of Oklahoma.

11

Chicago did not make the FTC a resident in the Northern District of Illinois, adding "[t]here is nothing inequitable in limiting the residence of a federal agency to the District of Columbia. *That has been the settled law for decades.*") (emphasis added); *Hancock v. Mitchell*, 231 F.2d 652, 653 (3d Cir. 1956) (per curiam) (holding venue was improperly laid in New Jersey because the federal officials resided in only Washington D.C.). These longstanding rules are still the rules under the current venue statute. *See, e.g., Greene v. United States Postal Serv.*, 745 F. App'x 299, 300 (10th Cir. 2018) (unpublished); *Lackey v. United States Dep't of Agric.*, No. 07CV484, 2007 WL 9662594, at *1 (W.D. Okla. Aug. 24, 2007) ("[t]he residence of the Defendants is that place where they perform their official duties.").

The case law on state officials applies the same rule regarding official residence. A state official sued in his official capacity resides at the state capitol. *See, e.g., N. Kentucky Welfare Rights Ass'n v. Wilkinson*, 933 F.2d 1009 (6th Cir. 1991) (unpublished table decision); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 237 (W.D.N.Y. 2010) ("For the purposes of venue, state officers 'reside' in the district where they perform their official duties." (quoting *Holmes v. Grant*, No. 03CV3426, 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006))); *Stanton-Negley Drug Co. v. Pennsylvania Dep't of Pub. Welfare*, No. 07CV1309, 2008 WL 1881894, at *4 (W.D. Pa. Apr. 24, 2008); *Fid. Nat'l. Info. Sols., Inc. v. Sinclair*, No. 02CV6928, 2003 WL 115588, at *1 n.2 (E.D. Pa. Jan. 8, 2003); *Procario v. Ambach*, 466 F. Supp. 452, 454 (S.D.N.Y. 1979). Some district courts do apply a balancing test rather than a rigid rule to determine the official residence, but the balancing test is only relevant in states like New York or Illinois where the relevant state official might reside in New York City or Chicago instead of the state capitol. *See, e.g., Protess v. Howell*, No. 95CV2553,

1995 WL 270219, at *3 (N.D. Ill. May 5, 1995); *Braggs v. Lane,* 717 F. Supp. 609, 611 (N.D. Ill. 1989).

Here, various Oklahoma officials with offices in Oklahoma City are sued in their official capacity. Under the residence rules noted above, their official residence for venue purposes is their office in Oklahoma City. Under state law too, where "[v]enue for actions against public officers is proper, and is considered to arise, where their office is located," suits against the State Election Board challenging state election laws are proper only in Oklahoma County. *See Gentges v. State Election Bd.*, 2018 OK 39, ¶ 11, 419 P.3d 224, 228. The same is true of the residency provision of federal venue law for the Board Members sued in their official capacity, and those members cannot have multiple residences under the venue statute, *see* 28 U.S.C. § 1391(c)(1), nor is their individual personal residence the relevant residence for an official capacity suit. Thus, this case should be dismissed or transferred because (1) all of Defendants' activities subject to the Complaint occurred in the Western District of Oklahoma, *see supra* Part B.1, and (2) all Defendants officially reside in the Western District of Oklahoma.

**C.      Alternatively, this Court should transfer venue for the convenience of the parties and witnesses.**

Should this Court find that venue is proper in the Northern District of Oklahoma, Defendants alternatively ask that it transfer this case to the Western District for convenience. Even if venue is proper, a district court has the discretion to transfer venue "for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). In deciding whether to grant a discretionary transfer, courts review several factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co.*, 618 F.3d at 1167 (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). "The convenience of witnesses is the most important factor . . . ." *Id.* at 1169 (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

While most of the factors are neutral or have minimal impact on the transfer analysis in this case, the most important factor favors a discretionary transfer here. All of the relevant witnesses are in Oklahoma City or out of state. Plaintiff Oklahoma Democratic Party has its office in Oklahoma City.[3] Plaintiff DCCC is a DC organization that supports Congressional candidates, and the only Oklahoma candidate listed in any of its support programs is the Oklahoma City member of Congress.[4] Defendants are all the officials of the Oklahoma State Election Board in Oklahoma City. Thus, this is a case involving Oklahoma City party officials and Oklahoma City campaign officials suing Oklahoma City state officials. There is no reason to make everyone spend four hours on the road for every day of trial when there is a courthouse in Oklahoma City.

---

[3] *See* Oklahoma Democratic Party, https://okdemocrats.org/ (listing their office as 3815 N. Santa Fe Ave, Suite 122, Oklahoma City, OK 73118).

[4] *See Frontline*, DCCC, https://dccc.org/frontline/; *Red to Blue*, DCCC, https://redtoblue.dccc.org/.

14

## II.   CONCLUSION

For all these reasons, this Court should (1) dismiss the Board Members as improper parties for the claims raised and (2) either dismiss this case for improper venue or transfer it to the Western District of Oklahoma.

Respectfully Submitted,

/s/ Mithun Mansinghani

MITHUN MANSINGHANI, OBA #32453
  *Solicitor General*
BRYAN CLEVELAND, OBA #33680
  *Assistant Solicitor General*
THOMAS SCHNEIDER, OBA #33047
  *Assistant Attorney General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Mithun.Mansinghani@oag.ok.gov
Bryan.Cleveland@oag.ok.gov
Thomas.Schneider@oag.ok.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System, which will transmit a Notice of Electronic Filing and a copy of the document to all counsel who have entered an appearance in this case. Additionally, an electronic copy was transmitted to the following counsel:

    Marc E. Elias, MElias@perkinscoie.com
    John Devaney, JDevaney@perkinscoie.com
    Ariel B. Glickman, AGlickman@perkinscoie.com
    Charles G. Curtis, Jr., CCurtis@perkinscoie.com
    Sopen B. Shah, SShah@perkinscoie.com
    Will M. Conley, WConley@perkinscoie.com

                                                       */s/ Mithun Mansinghani*
                                                        **MITHUN MANSINGHANI**