IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DCCC and OKLAHOMA DEMOCRATIC
PARTY,

                Plaintiffs,

     v.

PAUL ZIRIAX, *in his official capacity as*
SECRETARY OF THE OKLAHOMA STATE
ELECTION BOARD; TOM MONTGOMERY,
*in his official capacity as* CHAIRMAN OF THE
OKLAHOMA STATE ELECTION BOARD; DR.
TIM MAULDIN, *in his official capacity as*
VICE CHAIRMAN OF THE OKLAHOMA
STATE ELECTION BOARD; HEATHER
MAHIEU CLINE, *in her official capacity as a*
MEMBER OF THE OKLAHOMA STATE
ELECTION BOARD; JERRY BUCHANAN, *in
his official capacity as an* ALTERNATE
MEMBER OF THE OKLAHOMA STATE
ELECTION BOARD; and DEBI THOMPSON,
*in her official capacity as an* ALTERNATE
MEMBER OF THE OKLAHOMA STATE
ELECTION BOARD,

                Defendants.

Case No.: 20-CV-211-JED-JFJ

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
IMPROPER PARTIES AND DISMISS OR TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 3

    I.    The Members of the Board are proper defendants in this case............. 3

        A.    Plaintiffs properly sued the Members of the Board under
             *Ex parte Young*................................................................................. 3

        B.    Plaintiffs' injuries are traceable to and redressable (at
             least in part) by Members of the Board. ..................................... 6

    II.    Venue is proper in the Northern District of Oklahoma......................... 9

        A.    Venue is proper in the Northern District based on
             residence. .................................................................................... 10

        B.    Venue is also proper because "substantial events material
             to" Plaintiffs' claims occurred and will occur in the
             Northern District. ...................................................................... 13

    III.    Defendants have not met their burden to justify transfer under
         Section 1404............................................................................................. 19

CONCLUSION........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atherton v. Ward,*
   22 F. Supp. 2d 1265 (W.D. Okla. 1998) ................................................. 7

*Bates v. C & S Adjusters, Inc.,*
   980 F.2d 865, 868 (2d Cir. 1992) ........................................................... 16

*Bay Cty. Democratic Party v. Land,*
   340 F. Supp. 2d 802 (E.D. Mich. 2004) ................................. 10, 11, 13, 14

*Bronson v. Swensen,*
   500 F.3d 1099 (10th Cir. 2007) ............................................................... 7

*Bruni v. Hughs,*
   No. 5:20-CV-35, 2020 WL 3452229 (S.D. Tex. June 24, 2020) ............ 15

*Buffalo Teachers Fed'n, Inc. v. Helsby,*
   426 F. Supp. 828 (S.D.N.Y. 1976) ......................................................... 10

*Bush v. Vera,*
   517 U.S. 952 (1996) ............................................................................... 14

*Chamber of Commerce of U.S. v. Edmondson,*
   594 F.3d 742 (10th Cir. 2010) ................................................................. 4

*Chestnut v. Merrill,*
   No. 2:18-CV-00907-KOB, 2020 WL 1281236 (N.D. Ala. Mar. 17,
   2020) ...................................................................................................... 15

*Chevron Corp. v. Donziger,*
   974 F. Supp. 2d 362 (S.D.N.Y. 2014) ..................................................... 7

*Chrysler Credit Corp. v. Country Chrysler, Inc.,*
   928 F.2d 1509 (10th Cir. 1991) ............................................................. 20

*Cotham v. Garza,*
   905 F. Supp. 389 (S.D. Tex. 1995)......................................................... 15

*Emison v. Catalano,*
   951 F. Supp. 714 (E.D. Pa.1996).......................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153 (10th Cir. 2010) ..................................................................passim

*Ex parte Young*,
209 U.S. 123 (1908) ............................................................................ 4, 5

*Fla. Nursing Home Ass'n v. Page*,
616 F.2d 1355 (5th Cir. 1980), *rev'd on other grounds sub nom. Fla.
Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450
U.S. 147 (1981) .......................................................................... 10

*Frank v. Walker*,
768 F.3d 744 (7th Cir. 2014) ................................................................. 15

*Frank v. Walker*,
819 F.3d 384 (7th Cir. 2016) ................................................................. 15

*Gentges v. Oklahoma State Election Board*,
319 P.3d 674 (2014) ........................................................................ 6

*Goff v. Hackett Stone Co.*,
No. 98–7137, 1999 WL 397409 (10th Cir. June 17, 1999) .............................. 16, 17

*Greater Birmingham Ministries v. Merrill*,
284 F. Supp. 3d 1253 (N.D. Ala. 2018) .................................................... 15

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005)................................................................ 16

*Hanson v. Bosley & Bratch, Inc.*,
No. 17CV1489, 2018 WL 4491424 (D. Colo. Sept. 18, 2018)................................ 17

*Kitchen v. Herbert*,
755 F.3d 1193 (10th Cir. 2014) ....................................................... 4, 5, 6, 7

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979) ........................................................................ 18

*Lopez v. Abbott*,
339 F. Supp. 3d 589 (S.D. Tex. 2018)...................................................... 15

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014) ................................................................... 16

*Luft v. Evers*,
  Nos. 16-3003, 16-3052, 16-3083 & 16-3091, 2020 WL 3496860 (7th
  Cir. June 29, 2020) ................................................................................ 14

*McClure v. Manchin*,
  301 F. Supp. 2d 564 (N.D. W.Va. 2003) ................................................ 14

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004) ................................................................. 16

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005) ............................................................... 6

*Okla. Chapter of Am. Acad. of Pediatrics (OKAAP) v. Fogarty*,
  No. 01CV0187CVE-SAJ, 2006 WL 1623529 (N.D. Okla. June 6,
  2006), *subsequently rev'd and remanded sub nom. Okla. Chapter of
  Am. Acad. of Pediatrics v. Fogarty*, 472 F.3d 1208 (10th Cir. 2007) .... 12

*Prairie Band Potawatomi Nation v. Wagnon*,
  476 F.3d 818 (10th Cir. 2007) ............................................................ 4, 5

*Quorum Health Res., LLC v. Lexington Ins. Co.*,
  No. 11CV374, 2012 WL 769744 (D.N.M. Mar. 7, 2012) ....................... 17

*Reprod. Servs. v. Keating*,
  35 F. Supp. 2d 1332 (N.D. Okla. 1998) ................................................. 13

*Sch. Dist. of Phila. v. Pa. Milk Mktg. Bd.*,
  877 F. Supp. 245 (E.D. Pa. 1995) ......................................................... 14

*Scheidt v. Klein*,
  956 F.2d 963 (10th Cir. 1992) ............................................................... 19

*Soechting v. Perry*,
  548 U.S. 922 (2006) ............................................................................... 14

*Taylor v. White*,
  132 F.R.D. 636 (E.D. Pa. 1990) ............................................................ 10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Tex. Democratic Party v. Hughs*,
    No. 5:20-cv-8-OLG (S.D. Tex. Apr. 7, 2020)............................................................ 15

*Titsworth v. Hodge*,
    No. 17CV350, 2018 WL 3312985 (E.D. Okla. July 3, 2018) ................................. 17

*Transp. Funding, LLC v. HVH Transp., Inc.*,
    2:17-CV2106-JAR-GLR, 2017 WL 4223126 (D. Kan. Sept. 22, 2017) ................. 17

*Uffner v. La Reunion Francaise*,
    *S.A.*, 244 F.3d 38, 42–43 (1st Cir. 2001 ................................................................. 13

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) .................................................................................... 15

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) .................................................................................................... 4

*Voting for Am., Inc. v. Andrade*,
    888 F. Supp. 2d 816 (S.D. Tex. 2012), *rev'd and remanded sub nom.*
    *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ................................. 15

*Wachovia Bank v. Schmidt*,
    546 U.S. 303 (2006) ................................................................................................. 18

**Statutes**

28 U.S.C. § 1391............................................................................................................ 1, 9

Okla. Stat. tit. 26, § 2-101.9 ......................................................................................... 12

Okla. Stat. tit. 26, § 2-107 ............................................................................................ 11

Okla. Stat. tit. 26, § 2-107.1 ......................................................................................... 11

Okla. Stat. tit. 26, § 2-111–12 ........................................................................................ 5

Okla. Stat. tit. 26, § 3-102 ............................................................................................ 12

Okla. Stat. tit. 26, § 3-111 ............................................................................................ 11

Okla. Stat. tit. 26, § 3-113 ............................................................................................ 12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Okla. Stat. tit. 26, § 7-114 ............................................................... 6

Okla. Stat. tit. 26, § 7-136 ............................................................... 9

Okla. Stat. tit. 26 § 14-104 .......................................................... 2, 9

Okla. Stat. tit. 26, § 14-104–07 ...................................................... 5

Okla. Stat. tit. 26, § 14-111.1 ........................................................ 5

Okla. Stat. tit. 26, § 14-112.1 ........................................................ 5

Okla. Stat. tit. 26, § 14-113.2 ........................................................ 2

Okla. Stat. tit. 26, § 14-115.1 ........................................................ 2

Okla. Stat. tit. 26, § 14-122–23 ..................................................... 5

Okla. Stat. tit. 26, §  14-124 ......................................................... 5

Okla. Stat. tit. 26, § 14-125 .......................................................... 5

Okla. Stat. tit. 26, § 16-123.1 ....................................................... 2

Okla. Stat. tit. 26, § 3-102 ............................................................. 7

Okla. Stat. tit. 26, §  3-109 .......................................................... 11

**Other Authorities**

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3801 (4th ed.) ........................ 18, 19

13 Bus. & Com. Litig. Fed. Cts. § 140:38 (4th ed.) ..................................... 10

Annemarie Cuccia, *Financial institutions offer free absentee voter services*, NONDOC (June 5, 2020), https://nondoc.com/2020/06/05/financial-institutions-offer-free-absentee-voter-services/ ......................................................... 12

Carmen Forman, *Some banks offer free notary, copy services for absentee voters*, The Oklahoman (June 6, 2020) .................................. 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

CDC, 500 *Largest Cities by State and Population*,
https://www.cdc.gov/500cities/pdf/500-Cities-Listed-by-State.pdf
(based on 2010 U.S. Census data) (last visited July 9, 2020) ............................... 12

*In re: Court Operations Under the Exigent Circumstances Created by
the Novel Coronavirus and Associated Disease (COVID-19)*, General
Order 20-18 (N.D. Okla. June 30, 2020),
https://www.oknd.uscourts.gov/docs/aef2eb52-60ce-484b-bdd7-
6b8ab3a51545/20go18.pdf ...................................................................................... 21

Okla. Const. art. 3, § 2 ................................................................................................. 5

Okla. State Election Bd., Find Free Absentee Voter Services,
https://www.ok.gov/elections/Notary_Services.html (last visited July
9, 2020) .................................................................................................................... 12

*Okla. State Election Bd.*, https://www.ok.gov/elections/index.html (last
visited July 9, 2020) ................................................................................................ 5

Okla. State Election Bd., *OK Voter Portal*,
https://www.ok.gov/elections/OVP.html (last visited July 9, 2020) ....................... 8

Okla. State Election Bd., *Okla. Specifications for Digital Ballot
Printing* ¶ 2.3,
https://www.ok.gov/elections/docs/vris/Oklahoma%20Specifications
%20for%20Digital%20Ballot%20Printing%20October%202014.pdf ...................... 8

Okla. State Election Bd., *Physically Incapacitated Absentee
Instructions (June 30)*, YouTube (June 12, 2020),
https://www.youtube.com/watch?v=IFPTutvHOA0 ................................................. 7

Okla. State Election Bd., *Standard Absentee Instructions (June 30)*,
YouTube (June 12, 2020), https://www.youtube.com/watch?v=6-
dwTMrMiyQ ........................................................................................................... 7

Okla. State Election Bd., *State Election Board Secretary and Members*,
https://www.ok.gov/elections/About_Us/Secretary_and_Board/index.
html (last visited July 10, 2020) ............................................................................ 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Testimony of Paul Ziriax Before the Subcomm. on Investigations and*
  *Oversight and Subcomm. on Research and Tech. of the H. Comm. on*
  *Sci., Space, and Tech.* 2 (June 25, 2019),
  https://science.house.gov/imo/media/doc/Ziriax%20Testimony.pdf ........................ 6

U.S. Att'y's Office N.D. Okla., *About*, https://www.justice.gov/usao-
  ndok/about (last visited July 9, 2020).................................................................... 12

U.S. Dist. Ct., N.D. Okla., NDOK Map,
  https://www.oknd.uscourts.gov/ndok-map-0 (last visited July 9,
  2020)...................................................................................................................... 11

## INTRODUCTION

Plaintiffs DCCC and the Oklahoma Democratic Party ("ODP") challenge the constitutionality of unduly burdensome and onerous election laws. Oklahoma law confers upon Defendants Paul Ziriax ("Secretary Ziriax") and Members of the State Election Board (the "Board" or "Members of the Board") Tom Montgomery, Dr. Tim Mauldin, Heather Mahieu Cline, Jerry Buchanan, and Debi Thompson (together, "Defendants"), all of whom are named in their official capacities and who, in those capacities, have legal responsibility for implementing and enforcing the laws at issue in this case. Nevertheless, in their Brief in Support of Motion to Dismiss Improper Parties and Dismiss or Transfer Venue (ECF No. 24), the Members of the Board seek dismissal from this litigation, claiming they are not proper or necessary parties ("Mot. to Dismiss"). The Members of the Board are clearly wrong: under the long-standing doctrine of *Ex parte Young*, they are properly sued in this action. And Defendants' request to transfer venue reveals this motion for what it really is: a transparent attempt to slow these proceedings and move this case to a venue that Defendants apparently view as friendlier to their defense.

Defendants' venue argument is as flawed as the arguments the Members of the Board present to attempt to avoid their legal responsibility for administering Oklahoma's elections. It rests upon the baseless premise that the Western District of Oklahoma is the exclusive venue for federal challenges to Oklahoma's election laws. This assertion is contrary to the plain language of the federal venue statute—28 U.S.C. § 1391—and further undermined by authority from across the country that, as state officials, defendants are deemed to reside wherever they carry out their official duties, which plainly includes the Northern District. Indeed, the largest county election board in the State—the Tulsa County Election Board—is located in the Northern District, and Defendant Members of the Board have direct

responsibility for supervising the operations of the Tulsa County Election Board (among others).

There is also another entirely independent basis for establishing venue in this District. Under 28 U.S.C. § 1391(b)(2), venue is proper in any jurisdiction where "substantial events material" to Plaintiffs' claims occurred.[1] Here, DCCC's and ODP's members and constituents—Oklahoma voters—who reside within this District have been and will continue to be burdened and disenfranchised by the challenged election laws. Thousands of voters in this District are, for example, adversely affected by the requirements to have their absentee ballots notarized or witnessed, to provide photo identification, and to obtain postage for the absentee ballots at a time when the COVID-19 pandemic is surging, including in cities and towns within the Northern District. These voters also face the threat of prosecution *in this District* for requesting absentee ballots and returning them, marked and sealed, on behalf of other voters

---

[1] Plaintiffs claim that Oklahoma's (1) notarization, witnessing, and photo ID requirements, Enrolled S.B. 210; Okla. Stat. tit. 26, §§ 14-113.2, 16-123.1 (the "Notarization, Witness, and Photo ID Requirements"), (2) refusal to prepay for postage to return completed absentee ballots (the "Postage Requirement"); (3) rejection of absentee ballots delivered after 7:00 p.m. on Election Day, Okla. Stat. tit. 26 § 14-104; (the "Election Day Receipt Deadline"); (4) criminalization of organizations, like Plaintiffs DCCC and ODP, for engaging in the activities of requesting or receiving absentee ballots on behalf of their constituents, Enrolled S.B. 1779, §§ 1(A)(1)–(4), (B)(1), 12, 14 (the "Ballot Request Criminalization"); (5) prevention of anyone from collecting sealed and voted absentee ballots, except in the case of physically incapacitated or emergency incapacitated voters, Okla. Stat. tit. 26, §§ 14-108(A), 14-115.1 (the "Absentee Assistance Ban"); and (6) criminalization of the same, Enrolled S.B. 1779, §§ 1(A)(2), (B)(1), 12, 14 (the "Absentee Assistance Criminalization"), unconstitutionally burden their constituents' right to vote in violation of the First and Fourteenth Amendments. Plaintiffs separately claim that the Postage Requirement violates the Twenty-Fourth Amendment, that the Election Day Receipt Deadline denies Plaintiffs procedural due process, and that the Ballot Request Criminalization, Absentee Assistance Ban, and Absentee Assistance Criminalization violate their First Amendment rights of free speech and association, as incorporated against the states by the Fourteenth Amendment.

who require assistance. These are just a few of the many "substantial events material" to Plaintiffs' claims that occurred and will occur in the Northern District and that give rise to venue under 28 U.S.C. § 1391(b)(2).

Finally, Defendants have not met their burden to show that Plaintiffs' choice of forum should be disturbed. Mere statements about witnesses located in a different district—without explanation of the materiality of their testimony or their unwillingness to come to trial in the Northern District—is insufficient. Moreover, in the immediate term, proceedings will be conducted remotely unless "the interests of justice outweigh the safety risks."[2]

This Court should deny Defendants' Motion to Dismiss and Transfer.

## ARGUMENT

### I.    The Members of the Board are proper defendants in this case.

The Members of the Board's argument that they are not proper parties to this case is flatly wrong. Their motion is not completely clear as to whether they mean to argue that they are not proper parties under *Ex parte Young*, or if Plaintiffs lack standing to sue them here. *See* Mot. to Dismiss at 1–2 (arguing not proper parties under *Ex Parte Young*, but citing cases applying Article III standing requirements). Either way, the arguments fail. The Members of the Board, all sued in their official capacities, are appropriate Defendants under *Ex parte Young*, and Plaintiffs' injuries are traceable to them and redressable by injunctive relief ordered against them.

### A.    Plaintiffs properly sued the Members of the Board under *Ex parte Young.*

The Members of the Board's assertion that they are not proper defendants in this litigation is directly contrary to the well-established *Ex Parte Young* doctrine. *Ex Parte Young* requires two steps: first, a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly

---

[2] *See infra* note 21.

characterized as prospective," *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations incorporated), and second, consideration of whether the official in question has "some connection" to the challenged law's enforcement. As the Tenth Circuit has emphasized, "[a]n officer need not have a 'special connection' to the allegedly unconstitutional statute; rather, he need only 'have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.'" *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (citation omitted). "'So long as there is [some] connection [with enforcement of the act], it is not necessary that the officer's enforcement duties be noted in the act.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (citation omitted). Consistent with this long-standing jurisprudence, a state official is a proper defendant if she is "'responsible for 'general supervision' of the administration by the local . . . officials' of a challenged provision." *Id.* at 1204 (citation omitted). This remains the case, even if the state official is "'not specifically empowered to ensure compliance with the statute at issue,'" so long as she "'clearly [has] *assisted or currently assist[s] in giving effect to the law.*'" *Id.* (emphasis added) (citing *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)).[3]

These requirements are easily satisfied here. As described below, the Board oversees all of Oklahoma's county election boards, ensuring their compliance with the very laws Plaintiffs are challenging. The relief Plaintiffs seek thus necessitates an injunction against the Members of the Board to prevent them from using their supervisory power to require enforcement of these laws. Established in 1907, the Board is the "administrative agency for the conduct of state elections and *the*

---

[3] All of this is grounded in the plain language of *Ex parte Young*, 209 U.S. 123, 157 (1908), itself, in which the Supreme Court wrote, over 100 years ago: "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."

*oversight of* the state's 77 county election boards."[4] *See* Okla. Const. art. 3, § 2 (noting that the Board is "charged with the supervision of . . . elections"). The county election boards, in turn, are required to review requests for absentee ballots; print, test, and mail absentee ballots to eligible voters; and determine the eligibility of and count returned absentee ballots. *See* Okla. Stat. tit. 26, §§ 14-101(A), 14-104–07, 14-111.1, 14-112.1, 14-122–23, 14-125. The Board authorizes the county election boards to appoint "absentee counters" to tally the returned absentee ballots. *Id.* § 14-124. While the county boards carry out these, and other basic functions of election administration, it is the Board that supervises them and thus has supervisory authority over these functions.

The Board's expansive supervisory powers over the 77 county election boards alone—which include even the appointment of county election board officials—each of which engages in actions that are challenged in this lawsuit, is itself sufficient to find that the Board has "some connection with the enforcement of [these provisions,]" including the power to ensure that the county election boards act in compliance with Oklahoma law. *See id.* §§ 2-111–12; *Ex parte Young*, 209 U.S. at 157. As such, the Members of the Board are proper parties.

As the Tenth Circuit has noted, a state official's specific enforcement duties need not be enumerated in the challenged statute. *See Kitchen*, 755 F.3d at 1201. The fact that the Board oversees the county election boards, and therefore ensures their compliance with election laws, is sufficient evidence of the Members of the Board's enforcement authority. The Board "'clearly ha[s] assisted or currently assist[s] in giving effect to the [challenged provisions,]" by virtue of its oversight function, which the Tenth Circuit has upheld as sufficient when naming defendants. *Id.* at 1204 (citing *Prairie Band Potawatomi Nation*, 476 F.3d at 828). Further, as Secretary

---

[4] Okla. State Election Bd., https://www.ok.gov/elections/index.html (last visited July 9, 2020) (emphasis added).

Ziriax has aptly noted, it is the Board that "owns [the very] network used to securely communicate with county election boards."[5]

Gentges v. Oklahoma State Election Board, 319 P.3d 674 (2014) is instructive. There, a voter sued the Board regarding the imposition of a voter ID election law. Notably, the Court found that it had jurisdiction over the Board to decide the lawfulness of the voter ID requirement, and the Board did not contest that determination. The photo ID requirement that Plaintiffs challenge here, while applied to absentee ballots, mimics the same requirement applicable when voting in person. See Enrolled S.B. 210, § 3(A)(1) (noting that voters may "attach a photocopy of a form of identification described in" Okla. Stat. tit. 26, § 7-114, the very requirement challenged in Gentges). Thus, both Gentges, and the Board's prior treatment of the constitutionality of a photo ID requirement demonstrate that the Board has enforcement authority over the one challenged in this case, even if the statute does not explicitly say so. See Enrolled S.B. 210.

### B.   Plaintiffs' injuries are traceable to and redressable (at least in part) by Members of the Board.

To the extent the Members of the Board mean to argue that they are not proper parties on the grounds that Plaintiffs' injuries are not traceable or redressable to them, they are also wrong as a matter of both fact and law. Article III requires that plaintiffs establish that their injury is "fairly traceable to the challenged action of the defendant" and "a substantial likelihood that the relief requested will redress [their] injury in fact." E.g., Kitchen, 755 F.3d at 1201; see also Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005). Plaintiffs bringing actions against public officials can satisfy the causation and redressability requirements of standing by showing "'a meaningful nexus' between the defendant and the asserted injury."

---

[5] Testimony of Paul Ziriax Before the Subcomm. on Investigations and Oversight and Subcomm. on Research and Tech. of the H. Comm. on Sci., Space, and Tech. 2 (June 25, 2019), https://science.house.gov/imo/media/doc/Ziriax%20Testimony.pdf.

*Kitchen*, 755 F.3d at 1201 (citing *Bronson v. Swensen*, 500 F.3d 1099, 1111–12 (10th Cir. 2007)). Plaintiffs need not show complete relief will be redressed by all defendants in order to establish standing. *Cf. Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 639 (S.D.N.Y. 2014) (finding fact that particular equitable decree "would not provide a complete remedy . . . does not preclude the [c]ourt from granting equitable relief that would solve the problem in part"). Therefore, even if the Members of the Board can provide only partial relief, Plaintiffs have satisfied the requirements of standing.

The Members of the Board are directly involved in voters obtaining and receiving absentee ballots, as well as whether voters' returned marked and sealed ballots are counted—actions which are central to the relief Plaintiffs seek. Should Plaintiffs prevail, the Board would be required to change its operations, including its guidance for the county election boards and voters, promulgated on its website and in publications it distributes to Oklahoma voters and videos posted online to describe some of the challenged provisions—not to mention the ballot materials sent to voters.[6] *See Atherton v. Ward*, 22 F. Supp. 2d 1265, 1270 (W.D. Okla. 1998) (holding the Board responsible for changing forms distributed to voters and "training and educating their personnel[, including county election boards,]" on the terms of an order enjoining unconstitutional activity). As the Board provides "[a]ll forms required by law for state and county elections[,]" it must necessarily make any changes to these forms. *See* Okla. Stat. tit. 26, § 3-102.

---

[6] *See, e.g.*, Okla. State Election Bd., *Standard Absentee Instructions (June 30)*, YouTube (June 12, 2020), https://www.youtube.com/watch?v=6-dwTMrMiyQ; Okla. State Election Bd., *Physically Incapacitated Absentee Instructions (June 30)*, YouTube (June 12, 2020), https://www.youtube.com/watch?v=IFPTutvHOA0.

Along these lines, the Members of the Board permit voters to request absentee ballots through the Board's online OK Voter Portal.[7] Therefore, if Plaintiffs were to prevail on their challenge to the Ballot Request Criminalization, the Members of the Board would no doubt need to amend the ballot request form, including modifying the OK Voter Portal to permit third parties like Plaintiffs to assist voters in requesting absentee ballots.

Moreover, the Members of the Board cannot gloss over their involvement in the preparation and printing of ballot files, directly at issue in this case. As Secretary Ziriax has himself testified, "[f]or every election, no matter how large or small, the State Election Board staff prepare the ballot files. All ballot printing vendors are certified and subject to the supervision of the State Election Board. The State Election Board contracts with printers for federal and state ballots[.]"[8] Accordingly, by implication, the Members of the Board must also be the ones to change the ballot files, should this Court so order, before they are printed and distributed to county election boards.[9]

Additionally, as the Members of the Board have enforcement authority over the imposition of a photo ID, as demonstrated by *Gentges*, if Plaintiffs succeed on their claim that the photo ID requirement imposes an undue burden on the right to vote, they will be unable to receive the relief they desire, namely the enjoinment of this so onerous and unnecessary provision, and the assurance that their constituents' ballots will be counted.

---

[7] *See* Okla. State Election Bd., *OK Voter Portal*, https://www.ok.gov/elections/OVP.html (last visited July 9, 2020).

[8] *See supra* note 5, at 3.

[9] Okla. State Election Bd., *Okla. Specifications for Digital Ballot Printing* ¶ 2.3, https://www.ok.gov/elections/docs/vris/Oklahoma%20Specifications%20for%20Digital%20Ballot%20Printing%20October%202014.pdf (noting the Board provides the ballot files, wherein absentee ballots are contained, to printers).

Further, as Defendants note, the Members of the Board "certify the election results after receiving the results from each county board." Mot. to Dismiss at 2 (citing Okla. Stat. tit. 26, § 7-136). Because of the Election Day Receipt Deadline for marked and sealed absentee ballots, *see* Okla. Stat. tit. 26, § 14-104, which will result in large-scale disenfranchisement were it to remain in place, Plaintiffs have requested this Court both enjoin the county certification deadline of the Friday after Election Day and the state certification deadline of the Tuesday after Election Day, and postpone each by one week. *See* ECF No. 18, Am. Compl. at 43. Plaintiffs are concerned that if the Members of the Board are dismissed from this case, should the Court find the Election Day Receipt Deadline violates the First and Fourteenth Amendments, both deadlines would not be able to be moved as Plaintiffs have requested and as necessary to rectify the undue burden and due process violation associated with the Election Day Receipt Deadline.[10] Therefore, were the Members of the Board dismissed, Plaintiffs would risk not being able to receive their requested relief.

## II.    Venue is proper in the Northern District of Oklahoma.

Defendants' venue argument fares no better than the Member of the Board's attempt to avoid responsibility in this action. The federal venue statute provides multiple grounds to establish venue in a civil action, 28 U.S.C. § 1391, and the Court need not find the "best" venue. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010). Here, venue is proper in the Northern District on two independently sufficient grounds; the Court should deny Defendants' motion to dismiss or transfer on these grounds.

---

[10] *See also supra* note 5, at 3 (noting that State Election Board posts on its website "unofficial election results" for "every ballot that [is] cast by mail" and counted).

**A.      Venue is proper in the Northern District based on residence.**

First, venue in the Northern District is proper under 28 U.S.C. § 1391(b)(1), which provides that venue is proper if one defendant resides in the district, and all defendants are residents of the state. *Id.* § 1391(b)(1). Defendant Jerry Buchanan resides in Tulsa, in the Northern District, and all Defendants reside in the State. *See* Mot. to Dismiss at 12–13 & n.2.[11] Moreover, because all Defendants are state officials sued in their official capacity only, they are deemed to reside *anywhere* "they conduct their official duties"—not only in the state capitol or where their office is located. *See Taylor v. White*, 132 F.R.D. 636, 641 (E.D. Pa. 1990); 13 Bus. & Com. Litig. Fed. Cts. § 140:38 (4th ed.). Thus, even if none of the Defendants had their personal domicile in the Northern District, venue would still be proper here because the Defendants are state officials whose business is conducted here, as well as elsewhere around the State. The rationale for this is simple: "In the state context, there is little threat of inconvenience or even forum shopping, at least sufficient 'to warrant a blanket rule that there may never be more than a single residence.'" *Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds sub nom. Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981); *Buffalo Teachers Fed'n, Inc. v. Helsby*, 426 F. Supp. 828, 829–30 (S.D.N.Y. 1976).

In a similar case, a district court determined that the "defendants' argument that Michigan's secretary of state performs her official duties only in Lansing, Michigan and therefore may be sued only there does not withstand even the basest analysis." *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 806 (E.D. Mich. 2004). The court's holding was based on the fact that "[t]he Michigan secretary of state and director of elections have a statutory obligation to perform their official duties not only in Lansing but throughout the State." *Id.* at 807. The elections

---

[11]   Okla. State Election Bd., *State Election Board Secretary and Members*, https://www.ok.gov/elections/About_Us/Secretary_and_Board/index.html      (last visited July 10, 2020).

director "conduct[ed] training schools throughout this state" and "train[ed] *all county, city, and township clerks.*" *Id.* "The Michigan secretary of state's mission statement requires that she . . . will serve the *citizens of Michigan* with programs designed to . . . ensure the integrity of . . . the *statewide elections process.*" *Id.* She held herself out to be the State's "*Chief Election Officer.*" *Id.* Although all of the "election directives [at issue] were drafted in and distributed from Lansing," suit was proper in the Eastern District of Michigan because the defendants performed their official duties there. *Id.* at 808.

The same is true here. Defendants, including Secretary Ziriax, perform their official duties in the Northern District of Oklahoma. As the Secretary of the Board, he is the "chief state election official" and has "general supervisory authority over county election boards and shall have the authority to provide administrative supervision to any county election board," including the 11 counties in the Northern District.[12] Okla. Stat. tit. 26, § 2-107. The Secretary must hold a training program "in each county" for precinct inspectors, judges, clerks and other precinct officials. *Id.* §§ 2-107.1, 3-111. He must also "cause regular inspections to be made of each county election board." *Id.* § 3-109. The Northern District includes Tulsa County, which has the largest county election board by staff.[13] The Secretary is also responsible for promulgating and repealing statewide "rules or regulations as the Secretary deems necessary to facilitate and assist in achieving and maintaining uniformity in the application, operation and interpretation of the state and federal election laws." Okla. Stat. tit. 26, § 2-107. Moreover, the "Secretary . . . promote[s] and encourage[s] voter registration and voter participation in elections," *Id.* The Board provides all required forms for state and county elections, *id.* § 3-102, and the Secretary "prescribe[s]" the

---

[12] *See* U.S. Dist. Ct., N.D. Okla., NDOK Map, https://www.oknd.uscourts.gov/ndok-map-0 (last visited July 9, 2020).
[13] *See supra* note 5, at 4.

"[i]nstructions to voters describing the manner for casting one's vote," *id.* § 3-113. Over 27 percent of the State's population votes in the Northern District,[14] and Tulsa is the second most populous city in the State.[15] In 2018, the Board spent $3.4 million in conducting three *statewide* elections and an additional $546,000 on election supplies, overtime, and training—some of which was expended in the Northern District.[16] Oklahoma statutes contemplate that the Secretary and the Board travel on official business. Indeed, "[m]embers of the State Election Board" are paid a per diem and "mileage reimbursement" for travel for meetings across the State. Okla. Stat. tit. 26, § 2-101.9. Most recently, the Board partnered with banks and credit unions in Tulsa to provide voters with free access to notarization and photocopying services for identification cards.[17]

Finally, it is not at all unusual for Oklahoma state officials to have to defend against lawsuits in this District. To the contrary, cases are regularly brought against Oklahoma state officials in the Northern District and decided by this Court. *See, e.g.*, *Okla. Chapter of Am. Acad. of Pediatrics (OKAAP) v. Fogarty*, No. 01CV0187CVE-SAJ, 2006 WL 1623529, at \*3 (N.D. Okla. June 6, 2006), *subsequently rev'd and remanded sub nom. Okla. Chapter of Am. Acad. of Pediatrics v. Fogarty*, 472 F.3d 1208 (10th Cir. 2007); *Reprod. Servs. v. Keating*, 35 F. Supp. 2d 1332, 1337 (N.D.

---

[14] *See* U.S. Att'y's Office N.D. Okla., *About*, https://www.justice.gov/usao-ndok/about (last visited July 9, 2020).

[15] CDC, 500 *Largest Cities by State and Population*, https://www.cdc.gov/500cities/pdf/500-Cities-Listed-by-State.pdf (based on 2010 U.S. Census data) (last visited July 9, 2020).

[16] *See supra* note 5, at 4.

[17] Carmen Forman, *Some banks offer free notary, copy services for absentee voters*, The Oklahoman (June 6, 2020), https://oklahoman.com/article/5663971/some-banks-offer-free-notary-copy-services-for-absentee-voters; Annemarie Cuccia, *Financial institutions offer free absentee voter services*, NONDOC (June 5, 2020), https://nondoc.com/2020/06/05/financial-institutions-offer-free-absentee-voter-services/; Okla. State Election Bd., Find Free Absentee Voter Services, https://www.ok.gov/elections/Notary_Services.html (last visited July 9, 2020).

Okla. 1998). For all of these reasons, the Court should reject the Defendants'
arguments that they are not properly deemed to reside in the Northern District or
that venue is not otherwise proper here.

> **B.**   **Venue is also proper because "substantial events material to"**
> **Plaintiffs' claims occurred and will occur in the Northern**
> **District.**

Venue is also proper in this District for a second, independent reason. Under
the federal venue statute, a party may file suit in "a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred." 28
U.S.C. § 1391(b)(2). The Tenth Circuit "conduct[s] a two-part analysis when reviewing
challenges to venue under Section 1391(b)(2)." *Bartile Roofs*, *Inc.*, 618 F.3d at 1166.
Under this analysis, venue is proper in the Northern District in this case under this
analysis.

In applying the relevant two-part analysis, the Court, first, must "examine the
nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.*
"Second, [it] determine[s] whether substantial 'events material to those claims
occurred' in the forum district." *Id.* "The substantiality requirement is satisfied upon
a showing of 'acts and omissions that have a close nexus' to the alleged claims." *Id.*
At the second step, the Court must consider the "entire sequence of events underlying
the claim," including where the loss or harm occurred. *Id.* at 1167. For example, in
*Bartile Roofs*, the "alleged damages or loss under an insurance policy [ ] constitute[d]
a substantial event" although the location of the damages, Wyoming, was "irrelevant
to the interpretation of the C[ommercial] G[eneral] L[iability] policies" at issue, which
were "negotiated in Utah, underwritten in Colorado, and executed in Utah." *Id.*
(citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42–43 (1st Cir. 2001)); *see*
*also Bartile Roofs*, 618 F.3d at 1157. The location of the loss was part of the "entire
sequence of events underlying the claim" because "it form[ed] the basis of Bartile's
request for a defense and indemnification." *Bartile Roofs*, 618 F.3d at 1167; *see also*

*Land*, 340 F. Supp. 2d at 809 ("To establish a substantial connection to the claim, it is generally sufficient to demonstrate that injury or loss alleged in the lawsuit occurred in the chosen venue.").

In cases involving state officials, a substantial connection to the claim occurs not only where the "triggering event" takes place, but also where the effects of the decision are felt. *See McClure v. Manchin*, 301 F. Supp. 2d 564, 569 (N.D. W.Va. 2003) (rejecting secretary of state's claim that a state election law challenge must be brought in the district where the state government sits); *Emison v. Catalano*, 951 F. Supp. 714, 721 (E.D. Pa. 1996) (suits challenging official acts may be brought in the district where the effects of the challenged statute are brought despite being enacted elsewhere); *Sch. Dist. of Phila. v. Pa. Milk Mktg. Bd.*, 877 F. Supp. 245, 249 (E.D. Pa. 1995) (rejecting argument that venue is proper only where official decision was made); *see also Land*, 340 F. Supp. 2d at 808–09 ("In this case, the effects of the election directive are felt statewide, including within Bay County where one of the plaintiffs is located.").

Indeed, as noted above, courts consistently allow plaintiffs to challenge state election laws in federal districts that do not contain the offices of elections officials. Thus, as one court considering a very similar venue challenge in a voting case in Michigan recently observed, "[o]f the reported Sixth Circuit decisions brought against the Michigan secretary of state involving election law issues over the past twenty-five years, seven have been brought in the Eastern District," which does not include the state capital. *Land*, 340 F. Supp. 2d at 806. There, as this Court should, the court rejected the defendants' efforts to change venue. To name a few other examples, plaintiffs in voting rights cases have sued state officials in Milwaukee, not Madison, Wisconsin; Birmingham, not Montgomery, Alabama; and Laredo and Marshall, not Austin, Texas—*repeatedly. See, e.g., Soechting v. Perry*, 548 U.S. 922 (2006) (statewide redistricting plan challenged in E.D. Tex.); *Bush v. Vera*, 517 U.S. 952

(1996) (statewide redistricting plan challenged in S.D. Tex.); *Luft v. Evers*, Nos. 16-3003, 16-3052, 16-3083 & 16-3091, 2020 WL 3496860 (7th Cir. June 29, 2020); *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014); *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016); *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (statewide voter ID law challenged in S.D. Tex.); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816 (S.D. Tex. 2012), *rev'd and remanded sub nom. Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) (statewide registration law challenged in E.D. Tex.); *Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253 (N.D. Ala. 2018); *Chestnut v. Merrill*, No. 2:18-CV-00907-KOB, 2020 WL 1281236 (N.D. Ala. Mar. 17, 2020); *Bruni v. Hughs*, No. 5:20-CV-35, 2020 WL 3452229 (S.D. Tex. June 24, 2020); *Tex. Democratic Party v. Hughs*, No. 5:20-cv-8-OLG (S.D. Tex. Apr. 7, 2020) (challenging secretary's interpretation of statewide registration law); *Lopez v. Abbott*, 339 F. Supp. 3d 589 (S.D. Tex. 2018) (statewide redistricting plan); *Cotham v. Garza*, 905 F. Supp. 389 (S.D. Tex. 1995) (statewide law restricting what may be brought into voting booths).

Here, considering the "entire sequence of events underlying the claim," "substantial events material" to Plaintiffs' claims occurred in the Northern District. Plaintiffs bring constitutional claims that touch upon their and their constituents' most fundamental rights to participate in elections and Plaintiffs' inability to facilitate the exercise of these important rights during the present, unprecedented global pandemic. A substantial part of the "events or omissions giving rise to" these claims occurred or will occur in the Northern District. As noted, the Northern District is home to Tulsa, which has one of the State's largest concentration of Democratic voters. Thus, many voters within Plaintiffs' membership and constituency have struggled and will struggle to find notaries or two witnesses, or to copy their photo ID in the Northern District. Others will have to risk their lives in order to obtain postage for their ballots in the Northern District. Voters who timely request and mail their absentee ballots might have those ballots rejected for arriving too late in

counties in the Northern District. Plaintiffs are unable to request or collect absentee ballots on behalf of constituents there for fear that they will be criminally prosecuted in the Northern District.

In support of their motion, Defendants rely upon a case from the Eighth Circuit, but fail to mention that it articulates the *minority* position on this venue issue, and one that the Tenth Circuit has *explicitly declined to adopt.*[18] *See Bartile Roofs, Inc.*, 618 F.3d at 1166 n.11. While it is true that, in a 1999 unpublished opinion, *Goff v. Hackett Stone Co.*, No. 98–7137, 1999 WL 397409, at *1 (10th Cir. June 17, 1999), the Tenth Circuit stated that "venue statutes are generally designed for the benefit of defendants," and cited an Eighth Circuit case, the Circuit has since made clear *Goff* is not precedential. To the contrary, when confronted with that same defendant-centric argument in *Bartile Roofs*, the Tenth Circuit dismissed *Goff* as a "non-binding order" and expressly declined to adopt the Eighth Circuit's position. 618 F.3d at 1166 n.11.[19]

---

[18] Defendants also claim that the Second and Eleventh Circuits have adopted the Eighth Circuit's rule, Mot. to Dismiss at 7, but the Second Circuit has not. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (finding it irrelevant that "defendant did not deliberately direct a communication to the plaintiff's district" because "[u]nder the new version of section 1391(b)(2), we must determine only whether a "substantial part of the events ... giving rise to the claim" occurred in the Western District of New York); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005) ("[A] a number of relevant events occurred in New Jersey—the original injury, the trial, and the underlying judgment that [plaintiff] Gulf is seeking to avoid all happened in New Jersey."). To the extent that the two Second Circuit cases Defendants cite are inconsistent with *Bates*, a subsequent panel cannot overrule a prior one. *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014).

[19] At least four circuits have similarly rejected the Eighth Circuit's rule. *See* Mot. to Dismiss at 9 n.1 (listing the First, Third, and Sixth Circuits); *see also Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (allowing venue where the plaintiff performed his work under the contract at issue). That is the "majority view." *Cf.* Mot. to Dismiss at 10. Given Congress' continued liberalization of the venue rules, the majority view makes sense.

Moreover, the language in *Goff* is dicta, *see id.*, and its circumstances are clearly distinguishable from those at issue here. In *Goff*, the Tenth Circuit determined that the Eastern District of Oklahoma correctly held that venue was improper in a wrongful termination suit when the parties agreed that "[*a]ll* aspects of plaintiff's employment, including his discharge, occurred in Arkansas." *Goff*, 1999 WL 397409, at *1 (emphasis added). The issuance of an order from an Oklahoma court that "allegedly led to [plaintiff's] discharge was too tangential to be considered a substantial part of the events giving rise to the claim." *Id.* Here, in contrast, "all aspects" of Plaintiffs' claims did not occur in the Western District. Far from it. Thousands of Plaintiffs' voters live in the Northern District and will have to confront and grapple with (and be injured by) the challenged laws right here. Thousands of Plaintiffs' voters in Tulsa, for example, cannot locate witnesses or notaries without risking their lives. Others will risk prosecution in the Northern District if they request absentee ballots for other voters (or decline to do so out of fear of prosecution).[20]

---

[20] Defendants claim that district courts in the Tenth Circuit have "tended to follow" the *Goff* dicta. Mot to Dismiss at 9. Not really. Some courts considered the plaintiffs' activities as well. *See, e.g.*, *Hanson v. Bosley & Bratch, Inc.*, No. 17CV1489, 2018 WL 4491424, at *3 (D. Colo. Sept. 18, 2018) (relying heavily on *Bartile Roofs* and determining that "*plaintiff's signing of the contract* and defendants' communication about the missed deadline," which occurred in the district, "were 'at most tangential to the underlying legal malpractice claim'") (emphasis added); *see also Transp. Funding, LLC v. HVH Transp., Inc.*, 2:17-CV2106-JAR-GLR, 2017 WL 4223126, at *4 & n.58 (D. Kan. Sept. 22, 2017) (relying on *Bartile Roofs* for the test). Other cases are distinguishable. *See Titsworth v. Hodge*, No. 17CV350, 2018 WL 3312985, at *2–3 (E.D. Okla. July 3, 2018) ("Defendants," who allegedly provided negligent medical treatment in Arkansas, "had no connection to the Plaintiff's original injuries" that occurred in Oklahoma); *see also Quorum Health Res., LLC v. Lexington Ins. Co.*, No. 11CV374, 2012 WL 769744, at *3 (D.N.M. Mar. 7, 2012) ("the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum"). Here, Defendants have a connection to Plaintiffs' and their constituents' injuries occurring in the Northern District. The "facts giving rise to the lawsuit"—the risks of finding witnesses, notaries, or copies of photo identification, the inability to

Defendants' reliance on *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979), is also misplaced. Mot. to Dismiss at 7. *Leroy* interpreted the pre-1990 version of the venue statute, which allowed venue in "*the* judicial district . . . in which the claim arose." *Id.* at 184 (emphasis added). The old statute also required that *all* defendants live in the district, not just one. *Id.* at 178 n.9 (for suits not based on diversity). Even then, the Court said that the statute "restricted venue either to the residence of the defendants or to 'a place which may be more convenient to the litigants'—i.e., *both of them*—'or to the witnesses who are to testify in the case.'" *Id.* at 185 (emphasis added). Indeed, venue is a privilege that belongs to Plaintiffs as well. Since *Leroy*, "Congress has continually liberalized the provisions for venue." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3801 (4th ed.). Now, more than ever, "venue [ ] takes into consideration the location of parties [other than the defendants] and their activities." *Id.* "Venue is largely a matter of litigational convenience" generally, not just for defendants. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006); *see also* Wright & Miller, *supra*, § 3801 ("The principal focus of a venue inquiry is the 'convenience of *litigants* and *witnesses*.'" (emphasis added)).

Defendants argue that venue always must provide protection beyond the requirements of personal jurisdiction. Mot. to Dismiss at 10–12 (citing Wright & Miller § 3801). But that is not the rule. Congress specifically contemplated a perfect overlap between venue and personal jurisdiction in Section 1391(b)(3). Moreover, "[p]ersonal jurisdiction and venue, though separate concepts, share some traits." Wright and Miller, *supra*, § 3801. "Both are concerned with the territorial reach of the court," "[b]oth depend on statutory factors but incorporate equitable and prudential considerations," and "[m]ost courts of appeal assess lower court venue determinations by the same standard as personal jurisdiction determinations." *Id.*

_____

request or collect ballots given the threat of prosecution, and the absentee ballot's late arrival to the county election board—will all occur in the Northern District.

There might be some cases where venue and personal jurisdiction overlap. For example, such an occurrence would be common in the 28 states where there is only one federal district. And there is no evidence that allowing Defendants to be sued in both the Northern and Western Districts of Oklahoma renders venue a "nullity." Mot. to Dismiss at 12. The venue statute likely protects Defendants from being sued in other states in which they might have sufficient minimum contacts.

Moreover, Defendants' venue rule would mean that no one could challenge an Oklahoma election law anywhere but the Western District, *see* Mot. to Dismiss at 9. It would make no sense for venue to prevent a state official from being sued in two-thirds of his state. Congress intended venue to be proper in districts other than where defendants reside. Limiting venue to the district of the official's home and/or office would render Section 1391(b)(2) superfluous, as Section 1391(b)(1) sets forth the separate basis for venue in "a judicial district in which any defendant resides." As a result, a "place of trial" is not "unfair or inconvenient" just because a defendant does not reside there. Wright and Miller, *supra*, § 3801.

## III. Defendants have not met their burden to justify transfer under Section 1404.

Finally, the Court should decline Defendants' invitation to transfer venue in this case. While it is true that a court may transfer a case to another proper venue "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), "[t]he 'party moving to transfer . . . bears the burden of establishing that the existing forum is inconvenient.'" *Bartile Roofs, Inc.*, 618 F.3d at 1167 (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (internal quotation marks omitted)). A "plaintiff's choice of forum is entitled to some deference." Wright and Miller, *supra*, § 3801. Here, Defendants have failed to carry their burden.

The Tenth Circuit has been clear: "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Bartile Roofs, Inc.*, 618 F.3d at 1167. The court must weigh:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks omitted)). The balance of these factors must "*strongly favor[ ]*" a transfer of venue under § 1404(a). *Bartile Roofs, Inc.*, 618 F.3d at 1167 n.13 (emphasis added).

As relevant here, "the plaintiff's choice of forum should rarely be disturbed." *Id*. A general allegation that necessary witnesses are located in the transferee forum is insufficient to justify transfer. *Id.* at 1169. "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial ... [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" *Id.* at 1169 (citation omitted). "If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, ... the application for transferring the case should be denied." *Id.* (quoting Wright & Miller). For example, the Tenth Circuit was not persuaded by the defendant's allegation "that the majority of potential witnesses are Utah residents" because it "ha[d] neither identified those witnesses with specificity nor indicated the subject matter of their testimony." *Bartile Roofs*, 618 F.3d at 1169.

Here, the balance of factors does not favor transfer. Plaintiffs' choice of forum cuts against transfer. In addition, Plaintiffs' witnesses will include voters who live and vote in the Northern District. At least one defendant lives in Tulsa, Oklahoma. *See supra* p. 10.

Defendants rely entirely on the "accessibility of witnesses" factor and state that the remaining factors are "neutral or have minimal impact on the transfer analysis in this case." Mot. to Dismiss at 16. But Defendants' "general allegation" that "[a]ll of the relevant witnesses are in Oklahoma City or out of state," *id.*, is incorrect and, in any event, insufficient to warrant transfer, *see Bartile Roofs, Inc.*, 618 F.3d at 1169. As stated, Plaintiffs plan to call witnesses who live and vote in the Northern District, which includes the second biggest city in the State. Plaintiff ODP has a significant membership in the Northern District. In addition, at least one Defendant lives in the Northern District, so he would have to "spend four hours on the road for every day of trial," Mot. to Dismiss at 16, if the case were transferred. And, in the new era of court during COVID-19, remote testimony might accommodate any true inconvenience from traveling.[21] If this Court dismisses all Defendants but Secretary Ziriax, the convenience of Plaintiffs' numerous voter witnesses and party officials far outweighs the trouble of a single defendant driving for a few hours or staying in a hotel away from home for a few days.

## CONCLUSION

All Defendants named in the complaint are proper and should not be dismissed. Venue is proper in the Northern District under the federal venue statute for multiple independent reasons. Finally, Defendants have failed to carry their

---

[21] *See In re: Court Operations Under the Exigent Circumstances Created by the Novel Coronavirus and Associated Disease (COVID-19)*, General Order 20-18 (N.D. Okla. June 30, 2020), https://www.oknd.uscourts.gov/docs/aef2eb52-60ce-484b-bdd7-6b8ab3a51545/20go18.pdf.

heavy burden to justify transferring venue in this case. For all of these reasons, the Court should deny Defendants' motion.

DATED:   July 10, 2020

*s/ Frank W. Frasier*

Frank W. Frasier, OK# 17864
FRASIER, FRASIER & HICKMAN, LLP
1700 Southwest Boulevard
Tulsa, OK  74107
Telephone:  918.584.4724
Facsimile:  918.583.5637
FFrasier@frasierlaw.com

Marc E. Elias
John Devaney
Ariel B. Glickman
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, DC  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211
MElias@perkinscoie.com
JDevaney@perkinscoie.com
AGlickman@perkinscoie.com

Charles G. Curtis, Jr.
Sopen B. Shah
Will M. Conley
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone:  608.663.7460
Facsimile:  608.663.7499
CCurtis@perkinscoie.com
SShah@perkinscoie.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2020, I electronically transmitted Plaintiffs' Response to Defendants' Motion to Dismiss Improper and Dismiss or Transfer Venue to the Clerk of Court using the ECF System for filing, which will transmit a Notice of Electronic Filing and a copy of the document to all counsel who have entered an appearance in this case. Additionally, an electronic copy was transmitted to the following counsel:

Mithun Mansinghani, Mithun.Mansinghani@oag.ok.gov
Bryan Cleveland, Bryan.Cleveland@oag.ok.gov
Thomas Schneider, Thomas.Schneider@oag.ok.gov

DATED:   July 10, 2020

*s/ Frank W. Frasier*
Frank W. Frasier, OK# 17864
FRASIER, FRASIER & HICKMAN, LLP
1700 Southwest Boulevard
Tulsa, OK  74107
Telephone:   918.584.4724
Facsimile:   918.583.5637
FFrasier@frasierlaw.com