IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DCCC, *et al.*, | | |
| *Plaintiffs,* | Case No: | 20-CV-211-JED-JFJ |
| v. | | |
| PAUL ZIRIAX, *in his official capacity as* SECRETARY OF THE OKLAHOMA STATE ELECTION BOARD, *et al.*, | | |
| *Defendants.* | | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS IMPROPER PARTIES AND DISMISS OR TRANSFER VENUE AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I.     Plaintiffs' arguments on the Board Members misunderstand Oklahoma law. ................. 1

II.    Venue is improper in this District. .......................................................................... 4

      A.     Defendants do not officially reside in the Northern District, so
             venue is improper here under § 1391(b)(1). ................................................ 4

      B.     Defendants' events or omissions occurred in the Western District,
             so venue is improper here under § 1391(b)(2). ........................................... 5

CONCLUSION ..................................................................................................................... 10

Plaintiffs' opposition to the motion to dismiss seeks to (1) rely on a misunderstanding of Oklahoma law in order to force improper Defendants into this action and (2) apply venue rules never accepted by the Tenth Circuit to warrant proceeding with this suit here.

## I.    Plaintiffs' arguments on the Board Members misunderstand Oklahoma law.

A quick look at the State Election Board's "About Us" pages online would correct many of Plaintiffs' mistakes in their opposition brief. As the website explains, "The term 'State Election Board' may refer to either the agency or the three-member board." *State Election Board Secretary and Members*, OKLA. STATE ELECTION BD.[1] This distinction exists because the Board Members do not govern all actions of the agency; instead, management of the State Election Board is split between the Board Members and the Secretary of the State Election Board, depending on the issue. *Id.* The Board Members handle "certifying state and federal election results, appointing county election board members, and deciding contests of candidacy," but do not handle many other responsibilities of the agency. *Id.*

Plaintiffs' arguments therefore repeatedly confuse the role of the agency as a whole with the roles of the two sets of officials that take actions on behalf of the State Election Board: Secretary Ziriax, on the one hand, and the Board Members, on the other. Put another way, the relevant agency here is the State Election Board, but since the agency has sovereign immunity from suit, *Ex Parte Young* requires analyzing *who* is the relevant enforcement officer within the agency for the challenged agency actions. 209 U.S. 123, 157 (1908). So, while Plaintiffs cite several sources referring to actions and duties of the "State Election Board," their mistake is failing to distinguish whether any given act is assigned by law to the Secretary or instead to the Board Members.

Plaintiffs are correct that the agency, for example, has "oversight of the state's 77 county election boards," Okla. Const. art. 3, § 2, but that fact alone is insufficient to determine which state official within

---

[1] https://www.ok.gov/elections/About_Us/Secretary_and_Board/index.html

the State Election Board is a proper party to this suit. The constitutional oversight of county election boards is split between the Board Members and the Secretary: the Board Members have appointment and removal authority while the Secretary engages in almost all other supervision of county election boards, including their "application, operation and interpretation of the state and federal election laws." OKLA. STAT. tit. 26, §§ 2-107, 2-111, 2-114. Because this suit is about the latter duties, the sole proper officer to sue is the Secretary, not the Board Members.[2]

As another example, the Secretary employs the personnel who perform the agency's administrative duties and defines their roles. OKLA. STAT. tit. 26, § 2-107. Thus, when Plaintiffs cite his testimony where he stated that the agency staff programs and tests all election databases and "prepare the ballot files," Doc. 31 at 6 n.5, 8, they fail to realize that it is the Secretary—not the Board Members— who manages these agency staff actions.[3] Similarly, Plaintiffs' suggestions that changes to guidance to county election boards or to the agency website and databases require the Board Members, Doc. 31 at 7-9, simply fail to understand that those agency tasks are managed by the Secretary.

Plaintiffs also fail to rebut the extended citations in the Motion showing that the statutes they are challenging are handled by the Secretary and not the Board Members. *See* Doc. 24 at 2-3. They note a state court case that included the entire agency as a defendant. Doc. 31 at 6, 8 (citing *Gentges v. Oklahoma State Election Board*, 319 P.3d 674 (Okla. 2014)). Yet Plaintiffs do not contend that the state has waived sovereign immunity of its agencies in federal court; indeed, they do not here attempt to sue the agency, but instead they are attempting to sue the officials within the agency enforcing the challenged laws under *Ex Parte Young*. Here, the Secretary alone, not the Board Members, is the relevant official. They also note

---

[2] Similarly, while Plaintiffs note the agency "owns [the very] network used to securely communicate with county election boards," Doc. 31 at 6, communications about applying state election law come from the Secretary and not the Board Members.

[3] *See Testimony of Paul Ziriax Before the Subcomm. on Investigations and Oversight* 2 (June 25, 2019), https://science.house.gov/imo/media/doc/Ziriax%20Testimony.pdf.

a federal court case where the Board Members and the Secretary all remained as defendants without objection. Doc. 31 at 7 (citing *Atherton v. Ward*, 22 F. Supp. 2d 1265, 1270 (W.D. Okla. 1998)). But the Secretary was responsible for the relief in that case, and the fact that the Board Members did not raise their sovereign immunity and related defenses *there* does not preclude those defenses *now*.[4] Thus, neither authority rebuts the extensive citations showing the Secretary's exclusive role over the statutes at issue.

Plaintiffs also raise the idea that they need an order delaying state and county board members from certifying results. This argument is peculiar for two reasons. First, none of Plaintiffs' allegations or claims relate to the Board Members' deadline. Second, delaying the state Board Members would be pointless because they cannot certify the election results without county results. *See* OKLA. STAT. tit. 26, § 7-136 ("shall use such county returns"). State Board Members also do not control how those results are sent to them; the Secretary does. *See* 33 Ok Reg 1417 (citing OKLA. STAT. tit. 26, § 7-136 ("as prescribed by the Secretary")). Thus, an injunction issued to the Secretary would provide Plaintiffs the voting extension they desire because the delay in county returns would prevent any action by the state Board Members. If Plaintiffs (baselessly) believe that county board members will flout the Secretary's instructions issued pursuant to an order from this Court, then Plaintiffs need to add those county board members as parties. If Plaintiffs (baselessly) believe the state Board Members will certify a zero vote election even though state law tells them to use county returns, then Plaintiffs need to add that allegation, but it is nowhere in their Complaint. Until then, they have alleged no enforcement action by the Board Members that would waive sovereign immunity or otherwise allow retaining them as parties.

---

[4] Plaintiffs question whether this argument is proceeding under *Ex Parte Young* or standing. Doc. 31 at 3. The Board Members noted four doctrines at issue: *Ex Parte Young*, standing, failure to state a claim, and misjoinder. Doc. 24 at 1-2. The general distinctions between these doctrines do not matter for this particular motion because they are all controlled by the same question: Do the Board Members enforce the laws at issue? The answer is no.

3

Ultimately, Plaintiffs' opposition brief confirms what Defendants suspected at the outset: "Plaintiffs' decision to sue members of the election board may just be a misunderstanding." Doc. 24 at 2. There is no reason to double-down on this misunderstanding of state law, further confuse the public and future litigation, and keep the Board Members in this litigation when the Secretary is already a proper party to this suit. Accordingly, this court should dismiss the Board Members from this case.

## II.   Venue is improper in this District.

Plaintiffs advance no arguments or authorities on why a *personal* residence would be relevant to an *official* capacity suit. *See* Doc. 31 at 11. Plaintiffs therefore implicitly concede, in line with Wright & Miller, that Defendants' personal residence cannot supply venue in this suit. *See* Doc. 24 at 11. Because Plaintiffs' opposition only advances venue theories that apply equally to the Secretary and the Board Members—regarding official (rather than personal) residence—the proper parties issue does not affect the venue analysis, and this reply will address venue without further distinction between Defendants.

### A.   Defendants do not officially reside in the Northern District, so venue is improper here under § 1391(b)(1).

Plaintiffs' reading of the residence venue statute is oddly detached from the statute itself. The venue statute defines residency as "*the* judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1) (emphasis added). The text is clear that only one district can be the relevant residence; residency cannot lie everywhere in a state with three separate districts. *Contra* Doc. 31 at 10. Thus the text of the statute, along with Wright & Miller, dictates that courts look to a single official residence for official capacity suits. Doc. 24 at 11. Because Plaintiffs' multiple-districts theory of official residence does not fit the statute, they instead offer some policy arguments gleaned from case law. But all of their citations predate 2011,[5] when Congress added this definition of residence to the venue statute *Compare*

---

[5] Even under a pre-2011 venue statute, Plaintiffs' Michigan case law is of little value here because Michigan state officials maintain 173 offices throughout the state, with at least one in every county—

Federal Courts Jurisdiction and Venue Clarification Act of 2011, P.L. 112-63, 125 Stat 758, 764 (Dec. 7, 2011); *with* Doc. 31 at 10-11 (discussing cases from 1990, 1980, 1976, and 2004). This court should follow the text of the statute over Plaintiffs' outdated policy arguments and conclude that Defendants only officially reside in one judicial district: the Western District, where their office is located.

**B.    Defendants' events or omissions occurred in the Western District, so venue is improper here under § 1391(b)(2).**

To start, Plaintiffs are simply wrong when arguing that "venue is a privilege that belongs to Plaintiffs as well." Doc. 31 at 18. The only purpose of venue is giving Defendants the right to alter Plaintiffs' choice of forum. *See* Doc. 24 at 5-6. After all, a plaintiff initially selects a forum to advance their interests by choosing where to sue; the venue rules, on the other hand, tell a court that has subject matter jurisdiction whether it is a proper forum to protect <u>defendants'</u> interests. The venue statute (28 U.S.C. § 1391) is not a pure convenience balancing test like 28 U.S.C. § 1404(a). Rather, it is a statutory definition to protect defendants that applies regardless of whether the two forums at issue are two hours apart or twenty minutes.[6] Plaintiffs' arguments rely on transposing Plaintiffs' interests in convenience reflected in § 1404(a) into a venue analysis under § 1391. This court should not make that mistake.

Based on this error, Plaintiffs confuse the concept of where Defendants acted with where Plaintiffs suffered injury, misreading *Employers Mutual*. There, the Tenth Circuit first "examine[d] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). The insurance policy at issue was negotiated and signed in Utah, underwritten in Colorado, and insured a project in Wyoming. *See id.* It then examined "whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf*

---

a structure not present in Oklahoma or other states. *See Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) (distinguishing *Bay County*).
[6] *See Transp. Funding, LLC v. HVH Transp., Inc.*, No. 2:17CV2106, 2017 WL 4223126, at *4 & n.58 (D. Kan. Sept. 22, 2017) (Kansas City, KS is improper venue for case concerning Kansas City, MO).

*Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). While the defendant argued that only Utah was a proper venue, the Tenth Circuit held that Wyoming was a proper venue as well because <u>defendant</u> had performed the negligent work at issue in Wyoming. *See id.* The plaintiff, meanwhile, was facing a loss in Utah or Colorado, not where it filed suit in Wyoming. *See id.*[7] Plaintiffs try to glide over these facts by interpreting the relevant events to "includ[e] where the loss or harm occurred," Doc. 31 at 13, omitting that the Tenth Circuit only found venue proper where the defendant <u>acted</u>. Thus, the location of plaintiff's harm was not relevant to the Tenth Circuit's decision. *Employers Mut.*, 618 F.3d at 1166 n.11.

Accordingly, the only decision from the Tenth Circuit interpreting whether § 1391(b)(2) applies to plaintiff's harm as well as defendant's activities is *Goff*, which held it applies only to defendant's activities. Plaintiffs try to dismiss the relevant language from *Goff* as *dicta* by questioning whether sufficient contacts existed between the defendant and the forum—conflating venue with personal jurisdiction. *See* Doc. 31 at 17. They omit that *Goff* noted the plaintiff committed relevant activities in Oklahoma and that venue was improper because the defendants committed all of their acts in Arkansas. *Goff v. Hackett Stone Co.*, 185 F.3d 874, 1999 WL 397409, at *1 (10th Cir. 1999). Reading this as a minimum contacts test rather than an application of the explicitly-cited Eighth Circuit venue test is just misreading *Goff. See id.*[8] Most district courts in this circuit agree—which is why Defendants could easily find a string of citations in support of their position, Doc. 24 at 7-8, while Plaintiffs can only come up with two decisions over 21 years in the circuit, Doc. 31 at 17 n.20. *Goff* is the majority rule in this Circuit.

Plaintiffs' attempt to recast the *Goff* rule as a minority rule among Circuits is similarly incorrect. Doc. 31 at 16. *First*, both the district courts in the Second Circuit and the treatises recognize that the

---

[7] This is the reverse of the First Circuit case discussed in the motion: there, plaintiff was *suing* where his loss occurred, whereas in *Employees Mutual* the insured as defendant is *being sued* where his loss occurred. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001).

[8] Hence, there is no point in discussing the sufficiency of the contacts that Plaintiffs raise in a footnote because personal jurisdiction is not in dispute. *See* Doc. 31 at 17 & n.20.

Second Circuit adopted the Eighth and Eleventh Circuits' rule in *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). *See, e.g., Ne. Landscape & Masonry Assocs., Inc. v. State of Connecticut Dep't of Labor*, No. 14-CV-9104 (KMK), 2015 WL 8492755, at *4 (S.D.N.Y. Dec. 10, 2015) ([T]he Second Circuit has made clear that the venue analysis must focus on where the *defendant's* acts or omissions occurred.") (internal quotation marks omitted); WRIGHT & MILLER § 3806 n.8. Plaintiffs' attempt to re-read the Second Circuit's view based on earlier precedent cited in *Daniel* is simply disagreement with the Second Circuit's view of its own cases. *Second*, the Sixth Circuit has not taken a view on the split. Defendants offered a "*cf.*" cite merely to note that the Sixth Circuit has not condemned looking at plaintiffs' activities, but it has also never found venue based on those activities. *See* Doc. 24 at 7 n.1. *Third*, the Fourth Circuit case involves litigation between a lawyer and a client over work done for the client's litigation in Virginia. *See Mitrano v. Hawes*, 377 F.3d 402, 404 (4th Cir. 2004). The lawyer was acting as the client's agent in Virginia, *see id.*, so it would have been odd to conclude that a defendant did not act where his agent acted. Because venue in Virginia would be perfectly consistent with the rule in *Goff*, that panel's positive citation to the First Circuit's analysis is *dicta* at best. Thus, the *holdings* in the circuits still favor the *Goff* rule: the Second, Eighth, and Eleventh Circuits are in the majority versus the First and Third Circuits.

Aside from *Goff*, Plaintiffs also offer a host of erroneous arguments. *First*, they give a misguided defense of conflating venue and personal jurisdiction, pointing to Congress's provision for using the minimum contacts test when there is no other district where venue is proper, but failing to explain why that provision in 28 U.S.C. § 1391(b)(3) would change the meaning of § 1391(b)(2). Doc. 31 at 18.[9] Congress's language including personal jurisdiction in venue analysis under § 1391(b)(3) indicates that it intentionally excluded personal jurisdiction from venue analysis under § 1391(b)(2). *See Babb v. Wilkie*,

---

[9] The Wright & Miller treatise goes on to note that "personal jurisdiction and venue protect different interests" and "[p]ersonal jurisdiction and venue simply are not the same thing." CHARLES A. WRIGHT AND ARTHUR R. MILLER, *ET AL.*, 14D FED. PRAC. & PROC. § 3806.

140 S. Ct. 1168, 1177 (2020) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (courts presume that inclusion of particular language in one subsection means omission elsewhere was intentional).

*Second,* Plaintiffs note that some states have only one district, which prevents venue transfers within those states, but fail to explain why that is relevant in states like Oklahoma that have multiple districts. Doc. 31 at 19. Congress's creation of multiple federal districts within one state is not meaningless; it has practical consequences not to be ignored.

*Third*, Plaintiffs make the odd assertion that venue protects Defendants from being sued in other states. *Id.* But Plaintiffs' own strained interpretation of venue would offer no protection even for suits outside of Oklahoma: If Defendants sent enough absentee ballots to Kansas to be subject to personal jurisdiction there, the "risks of finding witnesses, notaries, or copies of photo identification" that Plaintiffs complain of, *id.* at 17 n.20, would occur in Kansas, making venue over this suit challenging Oklahoma laws proper in Kansas under Plaintiffs' theory.

*Fourth*, Plaintiffs argue that § 1391(b)(2) must provide another venue beyond the residence noted in § 1391(b)(1). There is no basis for that argument in the text. "[T]hese options are of equal dignity." WRIGHT & MILLER § 3804. Only § 1391(b)(3) specifies that it provides additional venue beyond the other options. The better explanation of the interaction between § 1391(b)(1) & (b)(2) is the one present in case law: that state election officials who act outside their official residence are subject to venue in either location, *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 808 (E.D. Mich. 2004) (noting that state officials in Michigan maintained branch offices in every county), while state election officials who act only at their official residence are only subject to venue there, *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) (noting that supervision of county officials occurred at the state capitol). The two provisions allow for different fact patterns; they don't guarantee two venues in every case.

Indeed, Plaintiffs' refusal to discuss the *Browning* case despite the extensive discussion in Defendants' motion is telling. As that court observed, an election official's statewide obligations do not subject him to venue everywhere a county official acts on his instructions. *See id.* at *3. Instead, he is only subject to venue where he "acted in conjunction" with a county official, either directly or through "offices or employees outside of the state capital." *Id.* at *2-*3. Thus, the Florida Secretary of State's responsibility to supervise county officials on validating petition signatures did not subject him to venue in every county. *See id.* After failing to address *Browning*, Plaintiffs here commit the same error as the plaintiffs there, relying heavily on the same Michigan case on venue without acknowledging Michigan's unique structure of having state election offices in every county. *See id.* at *3. Because Oklahoma, like Florida, uses a combination of state and county officials rather than having state election offices in every county, this court should follow the Florida court's reasoning in applying venue to election officials.

*Fifth*, Plaintiffs offer the meaningless observation that some state officials have failed to challenge venue in these sorts of cases. Doc. 31 at 12, 14-15. But Defendants here have generally asserted their venue privilege, notwithstanding the practice of election officials in other states. *See, e.g., Gentges*, 319 P.3d at 675 (noting that the Oklahoma Supreme Court ordered a transfer of venue from Tulsa to Oklahoma City at the agency's request). Defendants are not required to waive their venue rights just because other officials have done so. Indeed, most of Plaintiffs' citations do not discuss venue at all, with the exception of one where the court noted a venue challenge and declined to rule on it because Plaintiffs lacked standing anyway. *See Bruni v. Hughs*, No. 5:20CV35, 2020 WL 3452229, at *3 n.2, *7 (S.D. Tex. June 24, 2020). Hardly the ringing endorsement of statewide venue that Plaintiffs portray.

Ultimately, Plaintiffs have not met their burden of proving venue. If this court follows the *Goff* rule, that conclusion is clear: Plaintiffs advance no argument that venue is proper under *Goff*, instead

asking this court to reject the rule. *See* Doc. 31 at 16-17.[10] Even if this Court rejects *Goff*, adopting the minority rule focusing on effects on plaintiffs—a rule never once embraced by the Tenth Circuit—Plaintiffs' Complaint offers no allegations of effects on Plaintiffs in the Northern District to justify venue here. They simply assume that any effects on them somewhere in Oklahoma allow them to sue in any venue in the state. Plaintiffs' response brief is full of numerous allegations of how "Plaintiffs' voters" will be affected in Tulsa, *e.g.* Doc. 31 at 15-17, but they cite nothing for these propositions. Completely absent from their Complaint is any allegation particular to Tulsa or the Northern District, nor is this suit brought by any Northern District voters, nor do they even allege in their Complaint that Plaintiff organizations are headquartered in the Northern District or have members who live in the District. All of this appears for the first time in their response to a motion to dismiss. Citation-less suggestions made for the first time in a brief do not meet their burden. *See* Doc. 24 at 4. In any event, this Court need not opine on those proof deficiencies, as it should follow the majority rule among the circuits and among district courts in this circuit, apply *Goff*, and transfer this case to the Western District.

## CONCLUSION

For these reasons, Defendants respectfully request that this court (1) dismiss the Board Members from this case and (2) dismiss this case for improper venue or transfer it to the Western District.

---

[10] The farthest Plaintiffs go is in their arguments concerning § 1391(b)(1) (never referenced in their arguments regarding (b)(2) and *Goff*), such as pointing to the statewide duty to cause trainings to be held in counties. Doc. 31 at 11-12. But these purported facts justifying venue were raised for the first time in their opposition brief, not in their Complaint. This cannot meet their burden to prove venue. In any event, their brand-new allegations are the same sort of arguments rejected in *Browning* and have further legal defects, such as misrepresenting the statutes they cite, that Defendants lack space to clarify fully. *Compare* Doc. 31 at 11 (claiming the "Secretary must hold a training program 'in each county'") *with* Okla. Stat. tit. 26, § 3-111 (stating that Secretary "shall cause to be conducted a training program in each county") *and* O.A.C. § 230:10-5-12 (county secretaries train inspectors, judges, clerks, and other precinct officials in each county). Moreover, such facts cannot meet the "substantial" requirement of § 1391(b)(2) if they were so insubstantial that Plaintiffs did not bother pleading them in the Complaint.

Respectfully Submitted,

s/   *Mithun Mansinghani*
_____
MITHUN MANSINGHANI, OBA #32453
   *Solicitor General*
BRYAN CLEVELAND, OBA #33680
   *Assistant Solicitor General*
THOMAS SCHNEIDER, OBA #33047
   *Assistant Attorney General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Mithun.Mansinghani@oag.ok.gov
Bryan.Cleveland@oag.ok.gov
Thomas.Schneider@oag.ok.gov

*Counsel for Defendants*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System, which will transmit a Notice of Electronic Filing and a copy of the document to all counsel who have entered an appearance in this case.


s/  *Mithun Mansinghani*

MITHUN MANSINGHANI